IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**OMOWALE ASHANTI SHABAZZ,**

                Plaintiff,

v.                                         Case 1:17-cv-01051-JDT-cgc

**CENTURION, Private Health Care
Provider under contract with the
Tennessee Department of Correction
("TDOC"); TONY PARKER,
Commissioner of TDOC; KENNETH
WILLIAMS, M.D., Medical Director
for the TDOC; KENNETH L.
WILEY, M.D., Associate Medical
Director for the TDOC; MICHAEL
PARRIS, Warden, Northwest Correctional
Complex; and, CORTEZ TUCKER,
M.D., Medical Director at Northwest
Correctional, are sued in the individual
and official capacities,**

                Defendants.

---

### ORDER GRANTING IN PART AND DENYING IN PART
### PLAINTIFF'S MOTION TO COMPEL

---

Before the Court is Plaintiff Omowale Ashanti Shabazz's Motion to Compel (Docket Entry ("D.E.") # 44).[1] Plaintiff's Motion to Compel was referred in part to the United States Magistrate Judge (D.E. #52).[2] For the reason set forth herein, Plaintiff's Motion to Compel is GRANTED IN PART AND DENIED IN PART. The only discovery ordered herein is that

---

[1] Defendant Michael Parris had not been served with process as of the date of the filing of the instant motion. (D.E. #80).

1

Centurion must produce any records that it does possess that are responsive to Interrogatories #3, #4, #5, and #6 in Plaintiff's Second Set of Interrogatories and Requests for Production.

**I.     Introduction**

This case arises from Plaintiff's allegations that he was denied appropriate medical care for Hepatitis B and Hepatitis C while incarcerated with TDOC in violation of 42 United States Code Section 1983 ("Section 1983") and the Eighth Amendment to the United States Constitution. Plaintiff alleges that he has been incarcerated with TDOC since 1995, was diagnosed with Hepatitis B in 1995, and was diagnosed with Hepatitis C in 2004. Specifically, Plaintiff alleges as follows as to the Defendants whose discovery is at issue in the instant motion:

> Defendants Centurion, Parker, Williams, Wiley and Tucker have failed to create, implement, execute, or enforce constitutionally adequate policies, procedures and/or protocols for the treatment of prisoners, including Plaintiff, with Hepatitis. The failure to have such policies, protocols, or procedures directly caused or proximately caused the Plaintiff to be denied and/or delayed treatment for his Hepatitis, which has resulted in the Plaintiff suffering damages to his liver.
>
> . . . .
>
> Defendants Parris and Tucker failed to ensure that the Northwest Correctional Complex ("NWCX") had adequate policies, procedures and/or protocols for the treatment of prisoners with Hepatitis. The failure to have such policies, protocols or procedures directly caused or proximately caused the Plaintiff to be denied and/or delayed treatment for his Hepatitis, which caused Plaintiff to sustain damage to his liver.
>
> Defendant Centurion failed to ensure that the medical facility at NWCX was adequately financed to ensure that prisoners housed at NWCX who are diagnosed with Hepatitis, especially prisoners diagnosed as being co-infected with Hepatitis B and C, as Plaintiff is, received priority treatment. The failure of Centurion to ensure that the medical clinic at NWCX was adequately financed directly caused or proximately caused the Plaintiff to be denied and/or delayed treatment which

---

[2] The District Court denied Plaintiff's Motion to Compel as to Defendants Kenneth Williams, M.D. ("Williams") and Kenneth Wiley, M.D. ("Wiley"). The District Court permitted them thirty days from the entry of the Scheduling Order to serve specific responses to Plaintiff's discovery requests.

caused the Plaintiff to sustain damage to his liver, which is progressive and ongoing.

Defendants Centurion, Parker, Williams, Wiley and Tucker created, implemented, and enforced a policy, protocol, and procedure that has deprived the Plaintiff of needed medications for his anemia. The policy, procedure and protocol was created to save the TDOC and Centurion money while depriving the Plaintiff of needed medications because at the time he was without the necessary funds to purchase the medications.

Defendants Centurion, Parker, Williams, Wiley, Parris, and Tucker were and are deliberately indifferent to the Plaintiff's health and well being by failing to ensure that various applicable standards[3] were in effect at NWCX for the treatment and assessment of prisoners with Hepatitis. The failure of these Defendants to maintain these standards caused or proximately caused the Plaintiff to be subjected to unnecessary pain and suffering in the form of stomach pain, joint pain and liver damage as well as increasing his chances of developing liver cancer and cirrhosis of the liver.

Defendant Tucker discontinued or failed to renew Plaintiff's prescribed medications without any medical justification or reasoning whatsoever. Defendant Tucker's decision was based solely on financial considerations and not on Plaintiff's known medical condition—anemia.

(Pl.'s Verified Complaint ¶¶ 95-101).

## II. Applicable Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope of discovery in federal court. It states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Rule 37 of the Federal Rules of Civil Procedure provides

---

[3] Plaintiff alleges that the applicable standards come from the following organizations: the CDC, the NIH, the TDH, the FBOP, the AASLD and the ISDA.

that a party seeking discovery may move for an order compelling discovery if a party fails to answer an interrogatory submitted under Rule 33 of the Federal Rules of Civil Procedure or if a party fails to produce documents as requested under Rule 34 of the Federal Rules of Civil Procedure.

To prevail on a cause of action under Section 1983, a plaintiff must prove "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Jones v. Muskegon Cty.,* 625 F.3d 935, 941 (6th Cir.2010) (internal quotation marks omitted). The constitutional right at issue here arises from the Eighth Amendment's prohibition on cruel and unusual punishment. U.S. Const. amend. 8. To establish a violation of his Eighth Amendment rights resulting from a denial of medical care, Plaintiff must show that the prison officials were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. Plaintiff's Motion to Compel

Plaintiff's Motion to Compel challenges the sufficiency of Defendants' responses to his discovery requests propounded on June 13, 2018 ("First Discovery Request," filed at D.E. 44-4, PageID 323-325), July 18, 2018 ("Second Discovery Request," filed at D.E. #44-4, PageID 343-346), and September 7, 2018 ("Third Discovery Request," filed at D.E. #44-4, PageID 377-378). Dr. Tucker and Centurion responded to these requests. (D.E. #44-4, PageID 326-340, PageID 361-364, PageID 380-389). Following Defendants' responses to these requests, Plaintiff sent letters addressing the responses he believed to be inadequate (D.E. #44-4, PageID 341-342, PageID 347, PageID 365-370). Although Plaintiffs' letters conferring on the discovery responses only addressed certain responses, his Motion to Compel addressed additional

responses. Rule 37 of the Federal Rules of Civil Procedure provides that, in advance of filing a motion to compel, the movant must confer or attempt to confer in good faith with the person or party failing to make disclosure or discovery. Fed. R. Civ. P. 37(a)(1). The Court will only address the disputes about which Plaintiff conferred or attempted to confer.

### A. *Plaintiff's First Set of Interrogatories and Requests for Production*

#### i. *Plaintiff's Request for Production #1*

Plaintiff's Request for Production #1 requests the production of his "entire medical file." In addition to their general objections, both Centurion and Dr. Tucker responded that Plaintiff's medical records are in the possession of TDOC. Centurion responded that it is not authorized to disclose the medical records maintained by TDOC. Dr. Tucker responded that he is not an employee of TDOC and is therefore not authorized to disclose the medical records maintained by TDOC. Additionally, Centurion and Dr. Tucker have agreed to provide Plaintiff with his medical file when it is produced by TDOC.

Upon review, Centurion and Dr. Tucker are not required to produce records that are not in their possession, custody, and control. Fed. R. Civ. P. 34(a). They have further agreed to supplement their discovery when and if these records are produced to them. Accordingly, Plaintiff's Motion to Compel production of his entire medical file from Centurion and Dr. Tucker is DENIED.

#### ii. *Plaintiff's Interrogatory #1*

Plaintiff's Interrogatory #1 states as follows: "Please provide the date when Centurion first authorized direct acting antiviral drugs for the treatment of Hepatitis C within the prison

population in Tennessee." In addition to his general objections, Dr. Tucker responded that this request only seeks information from Centurion, and the Court agrees.

In addition to its general objections, Centurion responds that it was "not responsible for authorizing the use of direct acting anti-viral drugs for the treatment of Hepatitis C within the prison population in Tennessee. That particular decision was made by the Tennessee Department of Correction's Hepatitis Advisory Committee." Centurion's Response to Plaintiff's Motion to Compel further provides that "Centurion contracts with the Tennessee Department of Correction to supply physicians and mid-level providers to provide treatment and care to the prisoners" but "must still abide by the policies and decision of the Tennessee Department of Correction at all times while rendering this service." Accordingly, the Court concludes that this response adequately addresses Plaintiff's interrogatory as Centurion was not the entity that authorized the use of anti-viral drugs. Accordingly, Plaintiff's Motion to Compel further response from Dr. Tucker and Centurion on Interrogatory #1 is DENIED.

### iii. *Plaintiff's Interrogatory #4*

Plaintiff's Interrogatory #4 asks why certain medications—namely, Colace, a multivitamin, and an iron supplement—were prescribed to Plaintiff. In addition to his general objections, Dr. Tucker responded that he "only began working at the facility in 2014 and does not currently have sufficient information to determine" why these medications were prescribed to Plaintiff. Dr. Tucker further responded that "Colace is typically given for constipation and iron supplements are provided for iron deficiencies." Upon review, Dr. Tucker is not required to respond to a request about which he does not have information. He voluntarily responded with general information regarding the use of these medications.

In addition to its general objections, Centurion responded that Interrogatory #4 is not directed at it and would be better directed to Dr. Tucker. The Court agrees that medical personnel, not Centurion, would have prescribed medication. Thus, Plaintiff's Motion to Compel further response to Interrogatory #4 from Dr. Tucker and Centurion is DENIED.

### iv. *Plaintiff's Interrogatory #5*

Plaintiff's Interrogatory #5 asks Dr. Tucker how long the Plaintiff's blood work has shown that he is anemic. Centurion responds that this interrogatory is not directed to it, and the explicit language of the interrogatory demonstrates that to be correct. In addition to his general objections, Dr. Tucker responds that Plaintiff was noted to be anemic in October 2003 but that he does not know whether Plaintiff's anemia predates that time. Further, Dr. Tucker response that Plaintiff's medical chart, to the extent that it is accurate, would be the best source of information as to Plaintiff's anemia. Upon review, the Court concludes that Dr. Tucker has provided all information that he possesses as to Plaintiff's anemia diagnosis. Accordingly, Plaintiff's Motion to Compel further response from Dr. Tucker or Centurion to Interrogatory #5 is DENIED.

### B. *Plaintiff's Second Set of Interrogatories and Requests for Production*

### i. *Plaintiff's Interrogatory #1*

Plaintiff's Interrogatory #1 asks Dr. Tucker to "provide the month and year when . . . [he] first began using anti viral drugs for the treatment of Hepatitis C at Northwest Correctional Complex." Centurion responded that this interrogatory is not directed to it, and the explicit language of the interrogatory demonstrates that to be correct. In addition to Dr. Tucker's general objections, his response states that "the decision to treat inmates with direct acting anti-viral drugs for treatment of Hepatitis C was not within his control but instead it was established by the

7

protocols of the *Tennessee Department of Correction's Chronic HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C*" ("TDOC's Chronic HCV Guidance"). Dr. Tucker further responds that he is "not sure of the exact date that the Tennessee Department of Correction began using antiviral drugs for treatment of Hepatitis C at Northwest Correctional Complex but he believes that use began in 2015."

Upon review, Dr. Tucker has provided the information he possesses as to when he began using anti-viral drugs. He states that he did so when the TDOC Chronic HVC Guidance dictated them, which he estimates was in 2015. Accordingly, Plaintiff's Motion to Compel further response to Interrogatory #1 from Centurion and Dr. Tucker is DENIED.

### ii. *Plaintiff's Interrogatory #2*

Plaintiff's Interrogatory #2 asks Dr. Tucker to "describe in detail exactly what you have done since being the Medical Director at Northwest Correctional Complex to provide clinical guidance in the development of policy and procedure as it pertains to the assessment, diagnosis, treatment and post-treatment of inmates with Hepatitis B and C." Centurion responded that this interrogatory is not directed to it, and the explicit language of the interrogatory demonstrates that to be correct. In addition to Dr. Tucker's general objections, he stated that "his primary responsibility is to oversee the day to day treatment of the inmate population and not to develop statewide correctional healthcare policies." Dr. Tucker further responded that "the policies and procedures in assessing, diagnosing and treating inmates['] Hepatitis B and C were developed by the Tennessee Department of Correction" in the TDOC Chronic HCV Guidance. Dr. Tucker stated that he "routinely provides referral orders and requests for review by the Tennessee Department of Correction Hepatitis Advisory Committee" but that he "is not a member of that

8

committee." Upon review, Dr. Tucker has fully responded to the question of what he has done since being the Medical Director at Northwest Correctional Complex to provide clinical guidance in the development of policy and procedure as it pertains to the assessment, diagnosis, treatment and post-treatment of inmates with Hepatitis B and C. Accordingly, Plaintiff's Motion to Compel further response from Centurion and Dr. Tucker to Interrogatory #2 is DENIED.

### *iii.  Plaintiff's Interrogatories #3, #4, #5, and #6*

Plaintiff's Interrogatory #3 asks Centurion "from January of 2014 until answering this interrogatory, how many prisoners at Northwest Correctional Complex were Hepatitis B positive in 2014, 2015, 2016, 2017, and 2018." Plaintiff's Interrogatory #4 asks Centurion "from January of 2014 until answering this interrogatory, how many prisoners at Northwest Correctional Complex were Hepatitis C positive in 2014, 2015, 2016, 2017, and 2018." Plaintiff's Interrogatory #5 asks Centurion "from January of 2014 until answering this interrogatory, how many prisoners at Northwest Correctional Complex received the Hepatitis C treatment in 2014, 2015, 2016, 2017, and 2018." Plaintiff's Interrogatory #6 asks Centurion "from January of 2014 until answering this interrogatory, how many prisoners at Northwest Correctional Complex received the Hepatitis B treatment in 2014, 2015, 2016, 2017, and 2018."

Dr. Tucker responded that this interrogatory is not directed to him, and the explicit language of the interrogatory demonstrates that to be correct. Centurion responded that the interrogatory is vague, overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. Centurion responded that these interrogatories request information that is not discoverable as it may contain information regarding the medical condition of inmates other than Plaintiff and are therefore protected by the combined privacy

rights of those other residents and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Centurion further states that it believes that this information is in the possession of TDOC and is publicly available to Plaintiff due to the currently pending class action filed in the United States District Court for the Middle District of Tennessee, *Graham v. Parker*, No. 3-16-cv-01954. Centurion's motion further argues that it is unaware of any obligation to download all files from PACER to supply them to Plaintiff. Centurion further asserts that Plaintiff could use subpoenas and other discovery tools to obtain this information.

Upon review, the medical files Plaintiff seeks are relevant to this claim because they would allow him to determine the customary medical treatment provided to other inmates. *Madison Burris v. Randall Dodds*, No. 2:19-cv-815, 2019 WL 6251340, at *3 (Nov. 22, 2019) (citing *Candy Marcum v. Scioto Cty, Ohio*, No. 1:10-cv-790, 2012 WL 2018523, at *1, *7 (June 5, 2012) (holding that the third-party medical files of other inmates with similar conditions were discoverable when Plaintiff alleged deliberate indifference to his medical care for asthma); *Richard McEvoy v. Hillsborough Cty.*, No. 09-cv-431-SM, 2011 WL 1813014, at *1, *5, *8 (D.N.H. May 5, 2011) (holding that the third-party medical files of other inmates who underwent alcohol or drug detoxification while incarcerated were discoverable on Plaintiff's claim that their deceased son received inadequate medical care while experiencing heroin withdraw).

With respect to whether these documents violate HIPAA, other than generally mentioning this objection, Defendants have not articulated in their motion any argument for how HIPAA would prevent discovery of these records. HIPAA covers "any information, whether oral or recorded in any form or medium that is created and received by a healthcare provider and relates to the past, present or future medical condition of an individual." 42 U.S.C. § 1320d. Here,

Plaintiff is not seeking information covered by HIPAA; instead, he is seeking statistics on the number of inmates with the same diagnosis and the number of inmates receiving certain treatments. Such information is discoverable under HIPAA.

Finally, although the Court has determined that the requested records are discoverable, Centurion states that it believes that the information is in the possession of TDOC that it is also available from public filings in another federal court action. As stated above, Centurion is not required to produce records that it does not possess. However, Centurion's response is not clear whether it has attempted to locate the records or not. Accordingly, Centurion is ORDERED to produce any records that it does possess that are responsive to Interrogatories #3, #4, #5, and #6.

### iv. *Request for Production #2*

Plaintiff's Request for Production #2 states as follows: "Produce a copy of Centurion's utilization policy/procedures, guidelines and reporting format that was in use from January 2014 until answering this request as they pertain to the assessment, diagnosis, specialty referral, consultation requests, treatment, and post-treatment of inmates with Hepatitis B and C." Dr. Tucker responded that he is not in possession of any such documents other than those previously provided and that the request is directed at Centurion. The Court agrees that this request seeks production from Centurion rather than Dr. Tucker.

As for Centurion, in addition to its general objections, it responded that "all pertinent documents to this matter have been previously produced." Centurion further responded that "it did not have its own policies and procedures for the Tennessee Department of Correction facilities"; instead, Centurion's physicians were to follow the TDOC Chronic HCV Guidance and utilize their own independent professional judgment when providing treatment. As

Centurion stated that it has provided all pertinent documents that are responsive to this request, Plaintiff's Motion to Compel further production from Dr. Tucker and Centurion as to Request for Production #2 is DENIED.

### v. *Request for Production #3*

Plaintiff's Request for Production #3 states as follows: "Produce all emails and any other communications and correspondence between defendants Williams, Wiley, Tucker, and Centurion as they pertain, in any way whatsoever, to the treatment of inmates [at] Northwest Correctional Complex for viral Hepatitis B and C from between January 2014 until answering this request." Dr. Tucker and Centurion responded that this request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Dr. Tucker and Centurion further responded that the requested information is not discoverable, as it may contain information regarding the medical condition of inmates other than the Plaintiff and are therefore protected by the combined privacy rights of those other inmates and the Health Insurance Portability and Accountability Act of 1996 (HIPAA)."

As stated, *supra,* HIPAA covers "any information, whether oral or recorded in any form or medium that is created and received by a healthcare provider and relates to the past, present or future medical condition of an individual." 42 U.S.C. § 1320d. The Department of Health and Human Services ("HHS") has promulgated regulations to protect the privacy of this information. 45 C.F.R. § 164.500, *et seq.* HHS explicitly addressed whether protected information may be disclosed during judicial proceedings. *See* § 164.512(e). Its rules state that providers may disclose protected health information without patient consent only under certain circumstances.

*Id*. A covered entity may disclose protected health information in response to a discovery request only if it receives "satisfactory assurance[s]" that either (1) reasonable efforts have been made by such party to insure that the individual who is the subject of the protected health information that has been requested has been given notice of the request, or (2) reasonable efforts have been made by such party to secure a qualified protective order that complies with §164.512(e)(1)(v). Further, "[a] covered entity may disclose protected health information in the court of any judicial or administrative proceeding . . . [i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order." *Id*. § 164.512(e)(1)(i).

Here, because of the paramount importance of the privacy of other inmates' medical records, the Court would not consider ordering discovery of other inmates' protected health information until a qualified protective order is in place that is consistent with HIPAA requirements found in 45 C.F.R. § 164.512(e). Accordingly, Plaintiff's Motion to Compel discovery from Dr. Tucker and Centurion in Request for Production #3 is DENIED.

### C. Plaintiff's Third Set of Interrogatories and Requests for Production

#### i.     *Request for Production #1*

Plaintiff's Request for Production #1 states as follows: "Defendant Tucker, produce any document(s) and contract(s) you had/have with any entity that allowed you to provide medical care to prisoners at NWCX, along with terms of your employment, and special conditions of that employment, restrictions, compensation, bonus conditions, insurance coverage, etc. that pertain to your employment as Medical Director at NWCX." Centurion responded that this request is not directed at it, and the Court agrees. Dr. Tucker stated that the request is vague, overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Dr. Tucker further objected to this request on the basis that it impermissibly seeks information about insurance coverage in violation of *Thomas v. Oldfield*, 279 S.W.3d 259 (Tenn. 2009). Finally, Dr. Tucker stated that "pertinent information regarding his employment has already been produced."

Upon review, Plaintiff's Motion to Compel states that "this discovery request is directly relevant to the complaint" but does not articulate how that is the case. It is not clear to the Court how these details about Dr. Tucker's employment are reasonably calculated to lead to admissible evidence in this case. Accordingly, Plaintiff's Motion to Compel responses from Dr. Tucker and Centurion in Request for Production #3 is DENIED.

### ii. *Request for Production #2*

Plaintiff's Request for Production #2 requested that Centurion "produce certified copies of Centurion's quarterly and annual reports on Form 10-K and 10-Q for fiscal years 2013 [through] 2018." Dr. Tucker responded that this request is not directed at him, and the Court agrees. Centurion objected on the basis that this request is vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Centurion further stated that "these requested quarterly and annual reports are not reasonably calculated to lead to the discovery of admissible evidence in this action and are therefore outside the scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure." Therefore, Centurion argued that it should not be required to produce these documents.

Plaintiff's Motion to Compel states that "this discovery request is directly relevant to the complaint filed in this case, as the plaintiff asserts that the defendants withheld treatment for

financial reasons, and the Forms 10-K and 10-Q contain financial information that is extremely relevant to plaintiff's claims." Upon review, Plaintiff does not assert how these particular financial documents contain information that would demonstrate that Centurion is enriching itself by failing to provide appropriate medical care for Hepatitis B and C patients. Accordingly, Plaintiff's Motion to Compel production from Centurion in Request for Production #2 is DENIED.

IV. Conclusion

For the reasons set forth herein, Plaintiff's Motion to Compel is hereby GRANTED IN PART AND DENIED IN PART. The only additional discovery ordered herein is that Centurion must produce any records that it does possess that are responsive to Interrogatories #3, #4, #5, and #6 in Plaintiff's Second Set of Interrogatories and Requests for Production.

IT IS SO ORDERED this 24th day of March, 2020.

s/Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE