IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON

| | |
|---|---|
| OMOWALE ASHANTI SHABAZZ, a/k/a FRED DEAN, <br><br> Plaintiff, <br><br> vs. <br><br> CENTURION, ET AL., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )           No. 17-cv-1051-JDT-cgc <br>           JURY DEMANDED |

### AFFIDAVIT OF CORTEZ TUCKER, M.D.

Being first sworn according to law, the Affiant states as follows:

1. I, Cortez Tucker, M.D., am an adult citizen and resident of Tennessee, and am competent to make this Affidavit. I am aware that this Affidavit will be filed in support of a Motion for Summary Judgment on my behalf in the above-captioned lawsuit.

2. I am a medical doctor who has provided medical care at Northwest Correctional Complex in Tiptonville, Tennessee and have been named as a defendant in the above captioned matter. At times material to this action, I was the Medical Director at Northwest Correctional Complex in Tiptonville, Tennessee from August 18, 2014 until January 20, 2019.

3. I was licensed at all times material to this lawsuit to practice medicine in Tennessee, including 2016, the year immediately preceding the latest date asserted in the Plaintiff's Complaint. I am familiar with the standard of care governing a physician providing medical care to an inmate in the Tennessee Department of Correction.

4. As the Medical Director at Northwest Correctional Complex ("NWCX"), I did not assist in preparing the policies and procedures or the guidelines of the Tennessee Department of

**EXHIBIT 1**

1

Correction Advisory Committee on HIV and Viral Hepatitis Prevention and Treatment (hereinafter "Committee" or "TACHH").

5. The treatment course for hepatitis is governed by the TACHH. The committee sets policies of how to treat hepatitis C through the Tennessee Department of Correction's Chronic HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C and approves the treatment to be provided to each individual inmate.

6. Health care practitioners practicing at a correctional facility in the Tennessee Department of Correction system do not follow the Federal Bureau of Prisons guidelines for treating inmates with hepatitis C since the Tennessee Department of Correction is separate and apart from the federal prisoner system. Rather, we are required to follow the guidelines and protocols set forth by the TACHH.

7. Furthermore, even if Centurion of Tennessee, LLC had its own guidelines for Hepatitis C treatment, we are required to follow the guidelines and protocols of the TACHH, who is ultimately responsible for determining the care and treatment for each individual inmate.

8. Similarly, even though the American Association for the Study of Liver Diseases has set forth its own guidelines for the treatment of hepatitis C we are required to follow the guidelines and protocols of the TACHH, who is ultimately responsible for choosing the appropriate course of treatment for each individual inmate.

9. I am not responsible for determining the type of care an inmate receives for Hepatitis. Additionally, Centurion of Tennessee, LLC, is not responsible for determining the type of care an inmate receives for Hepatitis. Rather, those decisions rest within the sole discretion of the TACHH.

10. In my capacity as the Medical Director at that time at NWCX, I was responsible for monitoring the Plaintiff's liver enzymes, ensuring the Plaintiff received chronic care, making appropriate referrals to the TACHH, and following the committee's treatment recommendations and care guidelines.

11. The Plaintiff was not transferred to Northwest Correctional Complex until approximately July 24, 2014. Therefore, I did not have any control over the treatment Mr. Shabazz received prior to 2014.

12. Based on a review of the Plaintiff's medical records, at all times material to this action, the Plaintiff received reasonable, responsive, and appropriate care for both his Hepatitis. Excerpts from the Plaintiff's medical records are to be filed separately and under seal as "**Exhibit 2**" to the concurrently filed Motion for Summary Judgment. These excerpts are accurate copies of Plaintiff's medical records in the custody and control of the Tennessee Department of Correction. Further, the records have been certified by the Tennessee Department of Correction's Medical Records Clerk. (Exhibit 2, p. 1).

13. Specifically, upon his transfer to Northwest Correctional Complex, the Plaintiff was immediately determined to be a candidate for the Chronic Care Clinic. (Exhibit 2, pp. 2-3).

14. As such, the Plaintiff almost immediately started undergoing chronic care laboratory work, which occurred approximately every 3 months. (Exhibit 2, pp. 3-12).

15. I, in my capacity as the Medical Director of NWCX, referred the Plaintiff out for treatment with the TACHH on May 29, 2015. (Exhibit 2, pp. 13-14).

16. The Plaintiff signed a document entitled "Tennessee Department of Correction Hepatitis C Treatment Consent/Agreement Form" wherein he acknowledged that the Hepatitis C

therapy "may be of no benefit to" him and "may not free or clear" him of Hepatitis C. (Exhibit 2, p. 13).

17. The Plaintiff further acknowledged by signing this consent form that "completion of this agreement does not guarantee that I will be approved for Hepatitis C treatment." (Exhibit 2, p. 13).

18. The Plaintiff also signed a document entitled "Tennessee Department of Correction Hepatitis C Patient Counseling" on May 29, 2015. (Exhibit 2, p. 14).

19. On June 24, 2015, Amanda Collins, PA, referred the Plaintiff for a liver biopsy in order to further assess and treat the Plaintiff for his hepatitis. (Exhibit 2, pp. 15-17).

20. Further, on the same date, Amanda Collins, PA, ordered his quarterly lab work for his Hepatitis monitoring, as well as for a repeat ultrasound of his abdomen. (Exhibit 2, pp. 15-16).

21. In order for the Plaintiff to undergo the liver biopsy, the Plaintiff was transferred from NWCX to Lois M. DeBerry Special Needs Facility, otherwise known as "SPND," located in Nashville, Tennessee on July 27, 2015. (Exhibit 2, pp. 18-19).

22. The same day, the Plaintiff signed a consent form acknowledging that he would not have any oral intake of food after midnight in order to undergo the liver biopsy. (Exhibit 2, p. 20).

23. The aforementioned liver biopsy was performed on July 28, 2015 at Nashville General Hospital in Nashville, Tennessee and demonstrated that the Plaintiff had chronic hepatitis with moderate portal inflammation and lobular activity (Grade 3) consistent with chronic hepatitis C Viral Infection with focal periportal fibrosis (Stage 1-2). (Exhibit 2, pp. 21-27).

24. The Plaintiff continued to be monitored for his hepatitis. (Exhibit 2, pp. 28-30).

25. On November 9, 2015, I referred the Plaintiff to the TACHH in order for him to be evaluated for his hepatitis C, including possible antiviral medication and treatment. (Exhibit 2, pp. 31-34).

26. Even after I referred him to the TACHH, the Plaintiff continued to undergo his chronic care laboratory work every 3 months. (Exhibit 2, pp. 34-37).

27. A couple of months later, on February 18, 2016, I requested authorization for the Plaintiff to undergo an abdominal ultrasound in order to continue monitoring the Plaintiff's hepatitis and due to his complaints of right upper quadrant pain. (Exhibit 2, pp. 38-39).

28. Shortly thereafter, the Plaintiff had repeat lab work performed at the request of the TACHH. (Exhibit 2, pp. 40-42).

29. On March 4, 2016, the Plaintiff underwent the abdominal ultrasound, which demonstrated that his liver was normal and that his gallbladder was normal. There were not any abnormalities demonstrated on this ultrasound. (Exhibit 2, p. 43).

30. Following this ultrasound, the Plaintiff continued to undergo his chronic care lab work. (Exhibit 2, pp. 44-51).

31. On August 10, 2016, I once again referred Plaintiff to the TACHH. (Exhibit 2, p. 49).

32. On August 31, 2016, the TACHH determined that antiviral medication was not recommended for the Plaintiff at that time. The committee recommended that the Plaintiff was to be referred for an ultrasound and was to follow-up with the committee in 12 months. (Exhibit 2, p. 53).

33. After this decision, the Plaintiff continued to receive chronic care visits at NWCX. (Exhibit 2, pp. 52, 54, 55).

34. This decision of the Tennessee Department of Correction Hepatitis C Committee was received by Tommie Hamilton, FNP, on or about October 10, 2016. Nurse Practitioner Hamilton then promptly entered an order to follow-up with the Tennessee Department of Correction Hepatitis C committee within 12 months. (Exhibit 2, pp. 53, 56).

35. The following day, on October 11, 2016, I requested authorization for the Plaintiff to undergo an abdominal ultrasound per the committee's recommendation. (Exhibit 2, pp. 57-59).

36. This was approved the following day on October 12, 2016. (Exhibit 2, p. 57).

37. In order to undergo the ultrasound, the Plaintiff had to be transferred to SNPD. The Plaintiff underwent an ultrasound on October 18, 2016. This ultrasound was compared to the March 4, 2016 ultrasound. This ultrasound's impression was that there was a limited evaluation of the pancreas, but otherwise, all findings were within normal limits. (Exhibit 2, p. 60-62).

38. The Plaintiff was transferred back to NWCX from SNDP on or about October 26, 2016 after undergoing his ultrasound. (Exhibit 2, pp. 61-62).

39. Following this ultrasound, the Plaintiff continued to undergo routine lab work as part of his chronic care treatment plan. (Exhibit 2, p. 64).

40. On January 3, 2017, the Plaintiff refused to be transported back to SPND in order to attend a consult with a specialist in Nashville, Tennessee, which had been scheduled for January 18, 2017, regarding his hepatitis C and further treatment of it. (Exhibit 2, pp. 63).

41. The Plaintiff also refused to go to his chronic care visit on January 3, 2017 against medical advice. (Exhibit 2, pp. 63, 65).

42. After the Plaintiff's refusal of specialized treatment for his hepatitis, he continued to receive chronic care visits. (Exhibit 2, pp. 66, 69).

43. On May 30, 2017, I saw the Plaintiff to discuss the status of the Plaintiff's hepatitis and any possible treatment plans under the TACHH's guidelines and protocols. (Exhibit 2, p. 67).

44. On June 8, 2017, I entered an order for the Plaintiff to once again be referred to the Tennessee Department of Correction Hepatitis C Committee Advisory Committee. (Exhibit 2, p. 70).

45. This order was re-entered on July 31, 2017. (Exhibit 2, p. 68).

46. On August 14, 2017, I entered orders for the Plaintiff to undergo a second liver biopsy in order to continue evaluating the Plaintiff's hepatitis C. (Exhibit 2, p. 71-72).

47. The Plaintiff also continued to undergo his chronic care lab work and continued to receive medication for anemia. (Exhibit 2, pp. 72-75).

48. On November 28, 2017, the Plaintiff had an infectious disease consult via telephone pursuant to the direction of the TACHH. At that time, it was recommended that Plaintiff receive hepatitis C treatment. (Exhibit 2, p. 74).

49. On December 13, 2017, I resubmitted Plaintiff's information to the TACHH along with the infectious disease recommendation for treatment. (Exhibit 2, p. 73).

50. On January 22, 2018, I placed a request for authorization with the Tennessee Department of Correction Central Pharmacy to prescribe the Plaintiff the antiviral medication, Harvoni, for his hepatitis. (Exhibit 2, p. 77).

51. On this same date, orders were entered for the Plaintiff to be prescribed Harvoni, 90 mg/400 mg 1 tab by mouth once a day for 12 weeks. His lab work was also to be repeated after 12 weeks. (Exhibit 2, p. 79).

52. This Request was approved on January 24, 2018. (Exhibit 2, p. 78).

53. On or about February 3, 2018, the Plaintiff was started on a 12-week course of Harvoni for the treatment of his hepatitis and received the medication as prescribed. (Exhibit 2, pgs. 81-84).

54. During this 12-week time period, I met with the Plaintiff on March 20, 2018, and determined that the Harvoni was working as expected for the Plaintiff. (Exhibit 2, pp. 80, 85-86).

55. On March 27, 2018, the Plaintiff had another telemedicine visit with an infectious disease specialist. (Exhibit 2, p. 80).

56. The Plaintiff completed his 12-week course of Harvoni on or about May 5, 2018. (Exhibit 2, p. 82). The Plaintiff has therefore completed his treatment for hepatitis C.

57. On or about May 8, 2018, the Plaintiff had another telemedicine visit with infectious disease with the only recommendation being repeat hepatitis B vaccinations, which were ordered by Nurse Practitioner Hamilton on May 28, 2018. (Exhibit 2, p. 87).

58. The Plaintiff continued to receive chronic care treatment after this request was made, including routine visits with me to discuss his treatment options for his hepatitis under the TACHH's guidelines and protocols. (Exhibit 2, pp. 88-94).

59. In addition to the Plaintiff's hepatitis treatment, the Plaintiff was appropriately provided medication on an as-needed basis for his anemia and constipation, such as ferrous sulfate, a multivitamin, and Colace, respectively. These medications are not given on a routine basis for the treatment of these aforementioned conditions. (Exhibit 2, pp. 7, 15, 19, 29, 51, 62).

60. At all times material to this action, I provided appropriate care and treatment to the Plaintiff within the applicable standard of care at all times material to this action. Specifically, the care and treatment provided by me conformed with the generally accepted practices in the medical

community for monitoring and treating hepatitis. As such, the Plaintiff would have received the same or similar treatment if he were not incarcerated.

61. I referred the Plaintiff to the TACHH on at least 4 separate occasions including: May 29, 2015, November 9, 2015, August 10, 2016, and June 8, 2017. (Exhibit 2, pp. 13-14, 31-34, 49, 68-70).

62. Nothing I did or omitted to do caused any of the Plaintiff's alleged injuries or damages in this case.

63. I was not deliberately indifferent to the Plaintiff's medical needs in violation of the Eighth Amendment.

64. These opinions are based upon my review of the Plaintiff's medical records in this case and are expressed to a reasonable degree of medical certainty on each of these areas based upon my education, training, experience as a physician practicing in a correctional health care setting in Lake County, Tennessee in 2017 and the years preceding.

**[Verification on Next Page].**

Further the affiant saith not this __6__ day of February 2020.

_____
Cortez Tucker, M.D.

STATE OF TENNESSEE  )
                    )
COUNTY OF Wayne     )

Before me, a Notary Public in and for the State and County aforesaid, personally appeared Cortez Tucker, M.D., with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that he executed the foregoing Affidavit.

WITNESS my hand and official seal, this the __6__ day of __February__, 2020.

_____
NOTARY PUBLIC

My Commission Expires: 06-24-2020



10